# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| CLEARENT, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-01857-SNLJ |
| | ) | |
| STEPHANIE CUMMINGS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Stephanie Cummings' motion to dismiss for lack of personal jurisdiction (#6). The issues have been fully briefed. For the reasons set forth, the Court will **GRANT** the motion.

## I. BACKGROUND

According to the complaint, this case involves four defendants (all but Cummings have already settled) who are alleged to have used confidential, proprietary, and trade secret information to harm plaintiff, Clearent LLC., while secretly working for one of its rivals. Plaintiff is in the business of credit card processing, which it says is a "highly competitive" industry that relies on confidential and proprietary information to gain a competitive advantage.

Cummings was, at one time, an account executive for plaintiff. Her work responsibilities included, among other things, developing customer relations within a specific geographic area identified by plaintiff's sales team. In late 2018, plaintiff learned that Cummings "possessed an email address with CardConnect—a direct competitor to

1

[plaintiff.]" It is alleged that Cummings used this e-mail address to solicit potential customers for CardConnect while still employed by plaintiff, using plaintiff's confidential, proprietary, and trade secret information to do so. As a result, plaintiff filed a four-count complaint against Cummings—and the other defendants—alleging breach of contract (Count I), misapplication of trade secrets under the Missouri Uniform Trade Secrets Act (Count II), misappropriation of trade secrets under the federal Defend Trade Secrets Act (Count III), and declaratory judgment "seek[ing] a declaration that defendants have materially breached their employment agreements" and an injunction "ordering defendants to abide by and specifically perform in accordance with the terms of their employment agreements" (Count IV).

Specific to the issue of personal jurisdiction, plaintiff is a Missouri limited liability company with its principal place of business in Missouri. Cummings is domiciled in Montana. She has traveled to Missouri only once, for a three-day work conference in May of 2018 that did not include the exchange or use of any confidential, proprietary, or trade secret information at-issue in this case. She owns no real estate in Missouri, has never resided in Missouri, and states she has done no business in Missouri. Plaintiff disagrees with this last point, arguing Cummings "routinely communicated [by e-mail and phone] with [her] Missouri-based co-workers," and that "while [she] resides in Montana, she solicited and serviced plaintiff's customers in other states [such as] Washington, Nevada, and Alaska [that] explicitly identified that services would be provided by plaintiff in Missouri[.]" Plaintiff goes on to explain that Cumming's "tortious activities," even if committed extraterritorially, were ultimately felt in Missouri.

Plaintiff also alleges that Cummings consented to jurisdiction in Missouri by signing an employment contract that purportedly included a forum selection clause limited to Missouri.

**II. LEGAL STANDARD FOR REVIEW**

It is the plaintiff who bears the ultimate burden of establishing the existence of personal jurisdiction by a preponderance of the evidence. *Creative Calling Solutions, Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). At the motion stage, an action should not be dismissed for lack of jurisdiction if the evidence, viewed in a light most favorable to the plaintiff, is sufficient to support a conclusion that the exercise of personal jurisdiction over the defendant is proper. *Id.*

**III. ANALYSIS**

    **1. Personal Jurisdiction in a Federal Question Case**

When, as here, the court's subject-matter jurisdiction is predicated on a federal statute or other federal question, personal jurisdiction requires two elements: (1) plaintiff must demonstrate the Due Process Clause of the Fifth Amendment is satisfied in haling a defendant into the particular court in question—that is to say, there must be a constitutionally sufficient relationship between defendant and the chosen forum; and (2) plaintiff must show defendant is amenable to service of process, which is guided by Federal Rule of Civil Procedure 4. *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); Fed. R. Civ. P. 4.

The Due Process analysis questions whether either specific or general jurisdiction is satisfied—both designed to test the number, nature, and quality of a defendant's

"contacts" with the forum state under *International Shoe's* "minimum contacts" framework. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965) (establishing a five-factor test used within the circuit to determine whether the standards of *International Shoe* are met). To satisfy general jurisdiction, a defendant's contacts must be so "continuous and systematic" as for it to be fairly said that he or she is essentially at home in the forum. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Bristol-Meyers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Any claim may be heard against a defendant in the forum state having general jurisdiction over the defendant—even if all incidents underlying the claim occurred elsewhere. *Daimler AG*, 571 U.S. at 127; *Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780. On the other hand, specific jurisdiction is much narrower (though more commonly relied upon by litigants) and is only satisfied when defendant's "minimum contacts" in the forum state—sporadic and limited though they are—act as the foundational basis for suit there. *Daimler AG*, 571 U.S. at 126-127. In essence, specific jurisdiction permits a forum state to reach defendants who, through their own acts, targeted a forum state with the commensurate responsibility of answering for those acts there should they have caused a legal harm. *Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780-1781.

4

In this case, plaintiff claims to have specific personal jurisdiction over defendant rather than general personal jurisdiction and there there is no issue regarding whether plaintiff is amenable to service of process.

### 2. Whether Cummings Consented to Jurisdiction in Missouri By Way of Her Employment Contract

Before reaching the Due Process question, there is a more direct way to obtain personal jurisdiction: when a party consents to it by way of agreement. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); *Dominium Austin Partners, LLC. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001). As mentioned, it is plaintiff's position that Cummings consented to jurisdiction in Missouri by way of their employment contract. Plaintiff relies on two provisions:

> **13.15.** Dispute Resolution. *Any dispute or claim arising out of, or in connection with this Agreement will be settled by final and binding arbitration to be held in Missouri* in accordance with the commercial rules of the American Arbitration Association ("AAA"). Judgment upon award rendered by the arbitrators may be entered in any court having jurisdiction over: the award, the party against whom enforcement is sought, or that party's assets. The procedures and law applicable during the arbitration will be both the AAA rules and the internal substantive laws of Missouri (excluding any rules regarding conflicts of law). In such arbitration, the award of decision will be rendered by at least a majority of the members of an arbitration panel consisting of 3 members, one of whom will be appointed by each of the parties hereto. All arbitrators will be persons who are not employees, agents or former employees or agents of any party. In the event that any party fails to appoint an arbitrator within 30 days after submission of the dispute to arbitration, such arbitrator will be appointed by the AAA.
>
> **13.16.** Litigation Option. Notwithstanding Section 13.15, at the option of Clearent or its representative, *in the event of any dispute between the parties herein, such dispute may be resolved by litigation in a court of competent jurisdiction*.

5

(emphasis added). Plaintiff argues "while the present proceeding is not an arbitration"—as would otherwise be governed under paragraph 13.15—"[Cummings] agreed to provide plaintiff the option to litigate any dispute in court[,] this Court being of competent jurisdiction given [Cummings'] explicit consent and her contacts with Missouri." Cummings counters arguing the contract "does not contain a forum selection clause under which [she] agree[d] to submit to personal jurisdiction *litigation* in Missouri." (emphasis in original).

This Court agrees with Cummings. While paragraph 13.15 does, indeed, limit arbitration proceedings to be held—if at all—in Missouri, paragraph 13.16 goes on to provide a "litigation option" that states "***notwithstanding section 13.15*** … [a] dispute may be resolved by litigation in a ***court of competent jurisdiction***." Thus, the plain language of the parties' employment contract requires arbitration to be held in Missouri, while allowing litigation—if that option is chosen in lieu of arbitration—to be held in any "court of competent jurisdiction." To read paragraph 13.16's use of the phrase "court of competent jurisdiction" to narrowly mean "a court in Missouri" is to inappropriately rewrite the parties' contract to say what it does not say. Therefore, defendant is free to challenge whether this Court is a court of competent jurisdiction and, in particular, whether this Court can exercise specific personal jurisdiction over defendant.

This Court holds the parties' employment contract does not provide express consent to litigate in a federal court in Missouri.

### 3. Whether Cummings Has Sufficient "Minimum Contacts" with Missouri

Anticipating that its first argument may prove unsuccessful, plaintiff argues Cummings' business-related activities constitute the "minimum contacts" necessary to support a finding of specific personal jurisdiction over her. Plaintiff explains:

> [E]ven if the Court were to undertake a traditional personal jurisdiction analysis, it will conclude that personal jurisdiction exists [because of Cummings'] routine contacts with plaintiff's Missouri-based employees[,] the sale of Missouri services[,] and, most importantly, [Cummings'] three-day trip to Missouri to attend and participate in a work conference.

However, the mere fact that Cummings had "routine contact" with co-employees in Missouri, made sales to the benefit of a Missouri company (her employer, the plaintiff), and happened to attend a three-day business trip in Missouri is insufficient to establish specific jurisdiction. Whatever contacts may exist between Cummings and Missouri, for specific jurisdiction purposes these contacts must be tied to the basis of the suit against her; that is, "the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Meyers Squibb Co.*, 137 S.Ct. at 1780. Plaintiff does nothing to explain how this lawsuit "arises out of or relates" to Cummings' general communication with co-workers, her sales benefiting plaintiff, or her three-day business trip to Missouri. These business-related contacts are simply irrelevant in themselves without a particularized connection to the underlying dispute in this case.

Plaintiff also argues that specific jurisdiction exists because Cummings "made a contract" in Missouri by signing an employee agreement that was "accepted in Missouri." This Court disagrees.

The Supreme Court has long held that a contract with an out-of-state party does not, alone, establish personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 478. Instead, a court must consider "the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists." *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 821 (8th Cir. 2014). Pursuant to paragraph 2.1 of the employment agreement and an affidavit from plaintiff's vice president, Cummings' job was "to actively market[] Clearent's services and related products" in Montana, Washington, Nevada, and Alaska—not Missouri. Furthermore, any breach of the agreement, including its non-solicitation and confidentiality provisions under paragraphs 9 and 10, occurred, if anywhere, in Montana where Cummings resided and worked. And, again, tangential contacts with Missouri, such as Cummings' one-time trip there for a work conference or her periodic contact with co-workers by telephone for logistical purposes, have little-or-nothing to do with the obligations or purported breach of the parties' contract. *See Dairy Farmers of America, Inc. v. Bassett & Walker Int'l, Inc.,* 702 F.3d 472, 479 (8th Cir. 2012) (defendant's communication with plaintiff's office in Missouri by phone, e-mail, and facsimile were deemed insufficient to support jurisdiction).

Plaintiff's final argument favoring jurisdiction in Missouri is that the misappropriation-related claims "had consequences felt in Missouri." This argument is based on the "effects test doctrine" of *Calder v. Jones*, 465 U.S. 783, 788-789 (1984), which establishes that personal jurisdiction may be extended to cover out-of-state actors whose acts are intentionally directed to harm in-state plaintiffs. The effects test doctrine

is a narrow one, however, and the Supreme Court has gone on to caution that "[m]ere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Thus, in applying *Calder*, "[t]he proper question is not where the plaintiff experienced a particular injury or effect, but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. (*citing Calder*, 465 U.S. at 788).

In support, plaintiff cites *Myers v. Casino Queen, Inc.*, 689 F.3d 904 (8th Cir. 2012) for the proposition that "if a defendant can reasonably foresee that his or her actions will have consequences felt in Missouri, jurisdiction is authorized." But, this foreseeability standard does not inform the *Calder* effects test—indeed, *Myers* never mentions *Calder*. Rather, in discussing foreseeability, the Eighth Circuit was narrowly discussing the appropriate application of Missouri's long-arm statute. *Id*. at 911 ("[B]ecause it was foreseeable that [defendant's] actions could have consequences felt in Missouri, jurisdiction is authorized *under Missouri's long-arm statute*." (emphasis added)). Accordingly, *Myers'* foreseeability discussion is simply inapposite to the Due Process questions raised by *Calder*.

More on-point is the Supreme Court's analysis in *Walden v. Fiore*, 571 U.S. 115 (2014), where *Calder* was applied to a situation involving a Georgia police officer who seized cash at an airport from two Nevada residents returning home. *Id.* at 279-280. The cash was eventually returned and the Nevada residents, upset by what they believed was a wrongful seizure, filed a tort action against the officer in federal court in Nevada. *Id*. at 281. The Supreme Court held that Nevada did not have personal jurisdiction over the officer because "no part of [his] course of conduct occurred in Nevada" and "[his] actions

9

in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id*. at 289. It was stressed that "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant insofar as it shows that the defendant has formed a contact with the forum State. The proper question … [is] whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 290. The Supreme Court held the officer had not, himself, made sufficient minimum contacts with Nevada by seizing cash belonging to plaintiffs and found the factors relied on by them—that they felt injury in Nevada when they returned home without their cash, that the officer had contact with their Nevada-based attorneys, and that some of the cash seized "originated" in Nevada— were all inappropriately focused on their own (or third parties') contacts with the forum rather than the officer's conduct. *Id*. at 289-291.

The Court finds *Walden*'s treatment of the *Calder* effects test dispositive in this case. Like in *Walden*, plaintiff heavily focuses on its own Missouri contacts—noting it felt injury in Missouri due to Cummings' actions and further noting Cummings' job was to "solicit and cause plaintiff's customers to agree to contracts" that had ties to Missouri through its business. The proper question, however, is whether Cummings, by allegedly misappropriating certain proprietary and trade secret information, directed her own conduct at Missouri. This question must be answered in the negative. The record—like in *Walden*—shows only that Cummings acted in a way that she probably knew would affect a company having its own contacts with the forum. *Id*. at 289. But, there is no evidence that Cummings took action particularly directed at Missouri. Any disclosures of trade

10

secrets owned by plaintiff apparently occurred while Cummings was in Montana to benefit plaintiff's competitor, CardConnect. And there is no indication this was done to purposefully destabilize or destroy plaintiff's business. Unlike in *Calder*, there are also no facts present suggesting Cummings took any particular action in Missouri to advance her allegedly tortious activity. Simply put, there is a dearth of evidence indicating Cummings purposeful aimed her conduct towards Missouri. *See Fastpath, Inc.,* 760 F.3d at 824 (affirming dismissal for lack of jurisdiction and noting, under *Walden*, a lack of deliberately targeted conduct towards the forum); *see also Ariel Investments, LLC. v. Ariel Capital Advisors, LLC.,* 881 F.3d 520 (7th Cir. 2018) *(*rejecting an "aimed its actions" argument by plaintiff as "incompatible with *Walden*" and holding trademark infringement claim could not arise in Illinois where defendant's conduct was not aimed there despite knowing injury might occur to plaintiff there); *FC Stone, LLC. v. Buckley*, 864 F.Supp.2d 816, 823-824 (S.D. Iowa 2012) (court lacked jurisdiction over employer's action for breach of contract and misappropriation of trade secrets against out-of-state employees since there was no evidence that employees' conduct was aimed at Iowa). Accordingly, the Court declines to find in favor of jurisdiction under *Calder* in this case.

**IV. CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Stephanie Cummings' motion to dismiss for lack of personal jurisdiction (#6) is hereby **GRANTED**. An order of dismissal to follow.

11

So ordered this 21st day of February 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE